***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On July 23, 2001, an employee-employer relationship existed between the parties.
3. Defendant is self-insured. Cambridge Integrated Services is the servicing agent.
4. Plaintiff's average weekly wage is $372.39, resulting in a compensation rate of $248.27.
5. On July 23, 2001, plaintiff sustained a compensable injury to her back when she slipped and fell on the wet floor of the kitchen area where she worked.
6. Plaintiff is entitled to temporary total disability compensation for the period July 24, 2001 through September 12, 2001, and temporary partial disability benefits for the period September 13, 2001 through November 23, 2001 when plaintiff worked part-time.
7. Plaintiff is entitled to medical compensation for emergency room treatment on July 24, 2001, treatment at Blue Ridge Bone Joint Clinic, Blue Ridge Physical Therapy, and related treatment prescribed by Dr. Daniel Hankley through November 20, 2001, when he released plaintiff to return to work at full duty.
8. The following documents were admitted as:
a. Stipulated Exhibit #1: Medical records, including the vocational report of Randy Adams.
b. Stipulated Exhibit #2: Job Performance Reviews and Evaluations from 1983 to 2001.
9. The only issue before the Full Commission is whether the sanctions imposed against defendant by the Deputy Commissioner were proper.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On July 23, 2001, plaintiff was 57-years-old and worked for defendant for 26 years. Plaintiff's job consisted of washing dishes and making sure the cafeteria food line was properly stocked with food items. Plaintiff has a high school education.
2. On July 23, 2001, plaintiff fell down flat on her back and head on a cement floor while cleaning the dishwashing area of defendant's kitchen with a hose. The accident occurred around 3:00 p.m. Plaintiff immediately reported the fall to her supervisor, Ralph Hayes. Mr. Hayes filled out an "Employee Occurrence Report" and noted that "Employee slipped and fell on wet floor" in defendant's kitchen area.
3. On July 24, 2001, plaintiff reported for work. Plaintiff was having pain in her low back and went to the emergency room. Emergency room records indicate plaintiff reported that she fell the previous day in the dish room of defendant. Plaintiff stated that during the night she became sore in her low back. At the emergency room, Dr. David Poorbaugh told plaintiff to rest at home for the next few days and to go to her family doctor for follow up treatment.
4. Following her release from the emergency room on July 24, 2001, plaintiff went to her family doctor of 12 years, Dr. Gregory Glance, a board certified internal medicine physician with Asheville Internal Medicine. During a July 27, 2001 exam with Dr. Glance, plaintiff complained of low back pain. Dr. Glance doubled plaintiff's prescription of Celebrex to help deal with her ongoing pain and wrote her out of work until July 30, 2001. On July 30, 2001, plaintiff returned to Dr. Glance due to continued low back pain. Dr. Glance prescribed plaintiff additional pain medications and started her on physical therapy. Dr. Glance wrote plaintiff out of work until August 2, 2001.
5. Dr. Daniel Hankley, an orthopedist at Blue Ridge Bone Joint Clinic, saw plaintiff on referral from defendant from September 10, 2001 to November 20, 2001. Dr. Hankley diagnosed plaintiff with lumbar strain and spondylosis. Dr. Hankley felt plaintiff would be able to tolerate four hours of work per day in combination with physical therapy. On October 23, 2001, plaintiff presented to Dr. Hankley for an outpatient recheck and reported a pain flare. Dr. Hankley arranged for an MRI of plaintiff's lumbar spine to evaluate her for any herniated nucleus pulposis or annular tear. He also increased her to six hours of work per day. On October 31, 2001, Dr. Hankley reviewed plaintiff's MRI, which revealed significant generalized lumbar spondylosis with central spinal stenosis at L3-L4 and L4-L5, and bilateral foraminal stenosis at L4-L5. On November 20, 2001, Dr. Hankley felt plaintiff should return to full duty at 10 hours per day, although plaintiff was concerned about returning to full-time work. Dr. Hankley felt plaintiff was at maximum medical improvement for her lumbar strain.
6. On November 26, 2001, plaintiff saw Dr. John Zboyovski, a chiropractor at Back Pain Clinic, P.A., for back pain. Dr. Zboyovski's office notes and intake sheet indicate that plaintiff complained of back pain resulting from a July 23, 2001 fall at work. Dr. Zboyovski reviewed plaintiff's October 2001 MRI, took a full spine x-ray, and performed an exam. Dr. Zboyovski diagnosed plaintiff with severe disc degeneration throughout the lumbar spinal region. Plaintiff went to Dr. Zboyovski for numerous chiropractic adjustments from November 26, 2001 to May 21, 2002. On Family Medical Leave Act documentation completed for defendant dated December 4, 2001, Dr. Zboyovski stated that plaintiff was unable to perform any kind of work and that she was "incapacitated and will experience frequent episodes of remission and exacerbations." During his June 27, 2002 deposition, Dr. Zboyovski stated that he would need to see plaintiff again before reaffirming his earlier opinion regarding any ongoing disability.
7. On April 23, 2002, Dr. Larry Schulhof, board certified neurosurgeon at Mountain Neurological Center, P.A., saw plaintiff on referral from Dr. Glance. Plaintiff complained of low back, dorsal, thoracic, and neck pain. Dr. Schulhof's notes state that plaintiff was well until she fell on January 23, 2001 when she slipped on a wet floor and fell onto her back, rotating backward striking her head. Dr. Schulhof diagnosed plaintiff with degenerative spondylosis and degenerative disc disease. Dr. Schulhof recommended plaintiff begin epidural blocks to relieve some of her symptoms. He also recommended a possible cervical scan to evaluate plaintiff's neck. Dr. Schulhof explained in his deposition testimony that plaintiff could have had asymptomatic degenerative spondylosis and degenerative disc disease until the conditions were aggravated by her fall.
6. Plaintiff saw Dr. Glance several times throughout 2002 for her back pain, in addition to other health problems. On or about October 8, 2002, plaintiff complained of right-sided low back pain and stated that she was unable to work because she could not stand or sit for any length of time. Dr. Glance recommended epidural injections to relieve her pain. On November 8, 2002, plaintiff saw Paige Snow Brinke, P.A. at Dr. Glance's office. Ms. Brinke noted plaintiff wanted to return to work. Ms. Brinke told plaintiff to return to work the next Monday, November 11, 2002. On November 13, 2002, Dr. Glance wrote a letter for plaintiff recommending, based on plaintiff's description of her job, that she not empty trays, stoop, and empty trash, as she was having a great deal of pain in her back. Dr. Glance stated that he did not feel plaintiff's job was reasonable. On November 22, 2002, Dr. Glance saw plaintiff for continued back pain, as well as vaginal bleeding. Dr. Glance indicated plaintiff would most likely require a hysterectomy. On October 18, 2002, in response to a questionnaire submitted by plaintiff's counsel, Dr. Glance stated that plaintiff was unable to work due to her back condition and that he did not know whether she would be able to return to some type of gainful employment. Dr. Glance reaffirmed his opinion about plaintiff's total disability in his May 23, 2003 deposition.
8. On or about October 8, 2002, plaintiff returned to Dr. Hankley for the first time since November 20, 2001. Plaintiff complained of low back pain. Plaintiff informed Dr. Hankley that Dr. Glance took her out of work in approximately December 2001 and she had not worked since then. Dr. Hankley performed two trigger point injections and plaintiff expressed interest in trying an epidural steroid injection for recurrent pain. Depending on her progress, Dr. Hankley considered recommending plaintiff for surgery.
9. On January 26, 2003, Dr. Schulhof spoke to plaintiff about her three epidural lumbar blocks. Plaintiff indicated to Dr. Schulhof that she was feeling better. At that time, he was hopeful plaintiff could do some light duty work with a lifting requirement of 20 pounds and limited twisting, bending, and stooping until she had a hysterectomy. Dr. Schulhof did not feel plaintiff was a candidate for surgery at that time. During his July 7, 2003 deposition, Dr. Schulhof stated that in January 2003 he felt plaintiff may have been able to return to work at least at light-duty, but he was not sure. Dr. Schulhof testified that he would have to reevaluate plaintiff in order to render a current opinion on her ability to work.
10. Randy Adams, M.Ed., CVE, a vocational expert, evaluated plaintiff at the request of her attorney. Mr. Adams made a vocational assessment and administered various vocational and achievement tests, including the Wide Range Achievement Test, Purdue Pegboard to measure finger dexterity, Beck Depression Inventory, and Wide Range Intelligence Test. On the Wide Range Achievement Test, Mr. Adams found plaintiff tested as follows: reading — sixth grade, ninth percentile; spelling — fifth grade, ninth percentile; and arithmetic — sixth grade, eighteenth percentile. Intelligence testing indicated plaintiff to be in the "very low range of intellectual functioning" and Mr. Adams noted that testing showed her "finger dexterity is very low." After conducting his evaluation, Mr. Adams formed an opinion and testified that plaintiff is not capable of obtaining or maintaining any substantial gainful employment as is normally found in the local, state, or national economy. The light duty work that plaintiff performed for a limited time for defendant is not work which is generally available in the workplace and was specifically tailored to meet plaintiff's restrictions.
11. Considering the overall evidence, it is uncertain whether plaintiff will be able to return to earning wages in competitive employment. Further updated medical evaluation is needed, after which vocational assistance may be needed.
12. Based upon the greater weight of the evidence, as the result of the compensable injury by accident plaintiff was disabled from any employment for the period of July 24, 2001 through September 12, 2001 and from November 24, 2001 and continuing until plaintiff returns to work or further Order of the Commission. As the result of the compensable injury by accident, plaintiff was partially disabled from employment for the period September 13, 2001 through November 23, 2001 when plaintiff worked part-time.
13. Mary Silver is defendant's coordinator for workers' compensation claims. Ms. Silver stated at the Deputy Commissioner's hearing that defendant denied plaintiff's claim because plaintiff did not describe an accident. Ms. Silver explained further that because plaintiff could not remember why she fell, it was not considered an accident. Defendant also attempted to allege that plaintiff's fall was due to a seizure. However, plaintiff had one epileptic seizure in 1994, but had been on medication since then and had no further problems. There was no medical evidence of further seizures to support defendant's contention in this regard. Defendant otherwise made no attempt to investigate plaintiff's fall or determine whether there was any cause of her fall other than slipping on a wet floor.
14. Plaintiff's claim was effectively ignored and denied without sufficient basis, until approximately 11 days prior to the Deputy Commissioner's hearing when defendant accepted the claim as compensable. Defendant's denial and subsequent defense of this claim based upon a stated belief that plaintiff's fall was not a compensable accident was not reasonable. Therefore, as a result of defendant's unreasonable and unjustified defense of this case, the Deputy Commissioner by Order dated April 25, 2003, awarded an attorney's fee of $5,500.00 to plaintiff's counsel, to be paid in addition to the amount being paid to plaintiff, pursuant to N.C. Gen. Stat. § 97-88.1. According to defendant's brief to the Full Commission, this fee has been paid and is not an issue before the Full Commission.
15. At the March 24, 2003 hearing before the Deputy Commissioner, defendant represented and implied that the claim had been accepted and medical expenses paid. In an August 14, 2003 letter to the Deputy Commissioner, defense counsel represented that "During the interim and until a final resolution of this case or permission from the Commission to terminate compensation, defendant will continue to pay compensation for temporary total disability and medical compensation."
16. As of October 28, 2003, plaintiff's counsel advised the Deputy Commissioner in his Contentions that no outstanding medical expenses had been paid nor had plaintiff received any temporary total disability since November 23, 2001. In a November 7, 2003 response letter to the Deputy Commissioner, defense counsel advised that Cambridge had been ordered by the employer to pay the benefits acknowledged as due, in the amount of $1,808.82 in temporary total disability and $385.44 in temporary partial disability. Defense counsel, however, took the position that "Defendant is effectively stymied from reinstating temporary total disability compensation retroactive to November 12, 2001 and continuing because of plaintiff's counsel's insistence for further attorney's fees."
17. Defendant argues that the Deputy Commissioner's Order filed April 25, 2003 was unclear whether the $5,500.00 attorney's fee was in addition to or in lieu of the customary attorney's fee award of twenty-five percent of ongoing compensation. On several occasions defendant sought clarification from the Deputy Commissioner but received no response. Defendant refused to pay plaintiff any compensation because of its uncertainty concerning the attorney's fee. However, the more reasonable action on defendant's part would have been to pay the undisputed amounts to plaintiff, rather than penalizing plaintiff by totally withholding payment of any compensation.
18. In her July 29, 2004 Opinion and Award the Deputy Commissioner imposed an additional sanction against defendant of an attorney's fee of $4,800.00, which is the subject of the appeal to the Full Commission. The Deputy Commissioner calculated the attorney's fee by stating that if plaintiff's counsel received a contingency fee of twenty-five percent from the accrued benefits due plaintiff, plaintiff's counsel would receive between $9,000.00 and $10,000.00. Time sheets submitted by plaintiff's counsel indicated that he devoted an additional 31 hours to this case since the prior award of attorney's fees. An hourly fee based upon a modest rate of $120.00 would yield a fee of $10,300.00, which was the total attorney's fee the Deputy Commissioner awarded to plaintiff's counsel, pursuant to N.C. Gen. Stat. § 97-88.1. It appears from the language of the Opinion and Award that the Deputy Commissioner awarded total disability compensation to plaintiff and, in addition to that compensation, awarded plaintiff's counsel an additional attorney's fee of $4,800.00, to be paid separate and apart from the compensation due plaintiff.
19. Following the July 29, 2004 Opinion and Award by the Deputy Commissioner, defendant did not pay plaintiff total disability benefits for the period November 21, 2001 through July 29, 2004 until August 18, 2004. On August 16, 2003 defendant paid plaintiff total disability benefits for the period July 30, 2004 through August 12, 2004. Defendant did not reimburse plaintiff for her out-of-pocket expenses. Defendant also failed to satisfy past due medical bills, including bills for Dr. Zboyovski, as it was instructed to by the Deputy Commissioner's Opinion and Award. Defendant paid the North Carolina Vocational Rehabilitation Services bill on January 31, 2005.
20. Defendant offered no credible testimony to support its denial of this claim until the claim was accepted 11 days before the Deputy Commissioner's hearing. Defendant misled the Commission on at least two occasions by representations that it had admitted the claim, paid outstanding medical bills and paid past due compensation in this matter. As a result of defendant's failure to perform a reasonable investigation of this matter and defendant's failure to acknowledge and pay compensation due on a timely basis, plaintiff was forced to proceed to a hearing before a Deputy Commissioner and the taking of four depositions. Defendant's unreasonable and unjustified defense of this case constitute stubborn, unfounded litigiousness.
21. This matter was appealed to the Full Commission by defendant from an Opinion and Award awarding benefits and results in the affirmation of that award.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 23, 2001, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant, when she slipped and fell in the kitchen where she was working, resulting in injury to her back and head. N.C. Gen. Stat. § 97-2(6).
2. As the result of her July 23, 2001 injury by accident, plaintiff has been unable to return to work full time in the same or any other employment and is entitled to receive benefits for temporary total disability and temporary partial disability as previously set forth in this Opinion. Plaintiff is entitled to payment by defendant of total disability benefits in the amount of $248.27 per week from July 24, 2001 through September 12, 2001, and again from November 24, 2001 and continuing until such time as plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As the result of the compensable injury by accident plaintiff was temporarily partially disabled from employment and is entitled to payment by defendant of temporary partial disability compensation at the rate of two-thirds of the difference between her average weekly wages before the injury and the average weekly wages she was able to earn from September 13, 2001 through November 23, 2001. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to a 10% penalty to be paid by defendant for any total disability benefits that were paid more than 14 days after they became due. N.C. Gen. Stat. § 97-18(g).
5. As the result of her July 23, 2001 injury, plaintiff incurred expenses for medical treatment. Plaintiff is entitled to payment by defendant of all reasonably necessary medical expenses incurred by plaintiff for treatment of her injuries, including but not limited to the charges of the chiropractor, Dr. Zboyovski, and other medical doctors, and for medical and prescription costs recommended by any of her treating physicians, so long as said treatment effects a cure, gives relief, or tends to lessen plaintiff's period of disability. Defendant is also responsible for payment to plaintiff for mileage expenses incurred for travel for medical care. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Defendant has generally defended against plaintiff's claim without reasonable grounds, which was stubborn, unfounded litigiousness. Therefore, it is appropriate to assess a reasonable attorney's fee against defendant, to be paid to plaintiff's counsel, in the amount of $4,800.00, in addition to and not deducted from the compensation being awarded to plaintiff. N.C. Gen. Stat. § 97-88.1; Taylor v. J.P. Stevens Co.,307 N.C. 392, 298 S.E.2d 681 (1983).
7. Plaintiff's counsel has submitted an affidavit showing 52 hours spent on the appeal to the Full Commission. Plaintiff is entitled to a reasonable attorney's fee assessed against defendant in the amount of $7,500.00 pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff total disability compensation at the rate of $248.27 per week beginning July 24, 2001 and continuing through September 12, 2001 and beginning again November 24, 2001 and continuing until such time as plaintiff returns to work or until further Order of the Commission. All amounts accrued shall be paid in a lump sum to plaintiff.
2. Defendant shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between the average weekly wages before the injury and the average weekly wages she was able to earn during the period from September 13, 2001 through November 23, 2001. All amounts accrued shall be paid in a lump sum to plaintiff.
3. Any past due compensation is subject to a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18(g).
4. Defendant shall pay all expenses incurred by plaintiff for reasonably necessary medical treatment for the back injury she sustained on July 23, 2001, which includes expenses associated with treatment by Dr. Zboyovski, reimbursement of prescriptions paid out-of-pocket, and mileage associated with medical treatment, upon receipt of properly completed forms.
5. A reasonable attorney's fee of $4,800.00 is approved and shall be paid by defendant directly to plaintiff's counsel, in addition to and not deducted from the benefits due plaintiff. Defendant shall pay these attorney's fees in a lump sum directly to plaintiff's counsel as a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
6. A reasonable attorney's fee of $7,500.00 is approved for plaintiff's counsel and shall be paid by defendant to plaintiff's counsel for the costs of this appeal, pursuant to N.C. Gen. Stat. § 97-88.
7. A separate attorney's fee of twenty-five percent of any future compensation benefits that shall become due to plaintiff following the filing date of this Opinion and Award is approved for plaintiff's counsel. Therefore, every fourth future check due plaintiff shall be paid directly to her counsel.
8. Defendant shall pay all costs of this action.
This the 13th day of May 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER